# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Deborah Francis,<br><br>        Plaintiff,<br><br>  v.<br><br>Sue Dosal, Mark Thompson, Leah Wermerskirchen,<br><br>        Defendants. | Civil No. 11-1536 (SRN/AJB)<br><br>**REPORT AND RECOMMENDATION ON SUMMARY JUDGMENT** |

## INTRODUCTION

This matter is before the Court, Chief Magistrate Judge Arthur J. Boylan, on a Motion for Summary Judgment by Plaintiff Deborah Francis (Docket No. 56) and on a Motion for Summary Judgment by Defendants Jeff Shorba,[1] Mark Thompson, and Leah Wermerskirchen (collectively Defendants) (Docket No. 37). The matter has been referred to the magistrate judge for report and recommendation to the district court under 28 U.S.C. § 636 and Local Rule 72.2(b). A hearing was held on the cross Motions for Summary Judgment on November 15, 2012 at the U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415. John S. Garry appeared on behalf of the Defendants. Plaintiff appeared as a pro se litigant. For the reasons discussed below, the Court recommends that Plaintiff's Motion for Summary Judgment be denied and that Defendants' Motion for Summary Judgment be granted.

---

[1] Jeff Shorba is substituted for Sue Dosal as successor State Court Administrator [Docket No. 64].

**BACKGROUND**

On June 10, 2011, Plaintiff Deborah Francis filed her Complaint for Violation of Civil Rights under 42 U.S.C. § 1983 in the United States District Court for the District of Minnesota against Defendants Sue Dosal, Mark Thompson, and Leah Wermerskirchen. [Docket No. 1.] Plaintiff's claims for relief arise out of her contention that the administration of the jury selection process in Hennepin County, Minnesota violates the equal protection clause of the Fourteenth Amendment. (Compl. ¶¶ 89-90.)[2] An amended Complaint with exhibits was filed on December 23, 2011. [Docket No. 23.]

Plaintiff asserts that she is an African-American female who has resided in Hennepin County for more than five years, is over the age of 18, and has never been convicted of a felony. (*Id.* at ¶ 91-94.) Plaintiff alleges that the manner in which grand juries are selected in Hennepin County can be "rig[ged]" and "distinctive groups" can be granted "special favor or disfavor." (*Id.* at ¶57.) Plaintiff further alleges that "the design of the Hennepin County jury selection process permits the jury operations supervisor or her designee the right to make use of the returned questionnaires which includes the race identification question of prospective jurors" (*Id.* at ¶60) during the final determination of those qualified to be selected for seats on the grand jury. (See *Id.*) Thus, Plaintiff contends that the grand jury selection process in Hennepin County violates her equal protection rights because it permits those in charge of the jury selection process to exclude individuals from the grand jury because of their race. (*Id.* ¶¶ 89-90.)

---

[2]Similar complaints alleging Fourteenth Amendment violations have been brought by Plaintiff's nephew, Michael Francis, who was convicted of first degree murder and attempted first degree murder by an all-white jury in July 2004, and by Michael Francis's mother, Cynthia Brown. Michael's claim failed because he did not establish that the jury selection process is either susceptible to abuse or not racially neutral. *See Francis v. Fabian*, 669 F. Supp. 2d 970 (D. Minn. 2009). Brown's claim failed for lack of standing. *See Brown v. Dosal*, 10-CV-4315 SRN/AJB, 2011 WL 1990445 (D. Minn. May 23, 2011).

Plaintiff filed an initial Complaint on June 10, 2011 [Docket No. 1] and an amended Complaint on December 23, 2011. [Docket No. 23.] Defendants filed a Motion for Summary Judgment on August 24, 2012 wherein they argue that summary judgment should be granted because there are no genuine disputes of material fact and Plaintiff's claim fails as a matter of law. [Docket No. 39.] In response, Plaintiff filed a cross Motion for Summary Judgment on October 5, 2012 wherein she agrees that there is no genuine dispute of material fact but claims that her claim prevails as a matter of law. [Docket No. 56.] On October 25, 2012, Defendants responded by filing a Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment. [Docket No. 61.]

## DISCUSSION

### I. The Jury Selection Process

In support of their Motion for Summary Judgment, Defendants have submitted the Affidavit of Leah Wermerskirchen[3] ("Wermerskirchen Aff."), which includes as exhibits the Report and Recommendation, dated August 5, 2005, from the case *Miles v. Dosal,*[4] as well as the Affidavit of Lynn Lahd,[5] dated December 27, 2004, which was filed in that case. The Laud Affidavit contains a description of the jury selection process for the Fourth Judicial District in 2004. Wermerskirchen, speaking about the current jury selection process, states in the

---

[3] Leah Wermerskirchen has served as the Jury Division Supervisor for the Fourth Judicial District since August 2010. Wermerskirchen Aff. ¶2. As Jury Division Supervisor she manages, supervises and coordinates the juror selection process in the Fourth Judicial District, for both petit juries and grand juries. *Id.*

[4] *Miles v. Dosal*, 2005 WL 2415973, Nos. 04-4072 (D. Minn. Aug. 5, 2005). adopted by Order from the District Court dated September 27, 2005.

[5] Lynn Lahd served as the Jury Division Supervisor for the Fourth Judicial District immediately prior to Ms. Wermerskirchen. Wermerskirchen Aff. ¶ 3 and Ex. B.

Wermerskirchen Affidavit that "[t]he process for selecting grand jurors in the Fourth Judicial District remains the same as described in the Report and Recommendation and the Lahd Affidavit, except for a few minor changes." Wermerskirchen Aff. ¶4. These minor changes involve a change in the name of the source list, an annual juror master list which contains all of the Hennepin County residents on the year's State Jury Source list instead of a subset, an option to complete the jury questionnaire online, and disqualification for prior jury service for service in the past four years rather than the past two. *Id.* These changes are reflected in the current Fourth Judicial District Jury Administration Plan. Wermerskirchen Aff. ¶¶ 4-6, 8, 10 Ex. C..

In *Miles v. Dosal*[6] the court ruled on a similar challenge to the jury selection process of the Fourth Judicial District in 2005. The court ordered that the Plaintiff's claim be dismissed because he could not establish a prima facie case for racial discrimination in the jury selection process for the Fourth Judicial District. This decision was affirmed on appeal to the Eighth Circuit Court of Appeals. The jury selection process at issue in the present case was set forth in *Miles v.Dosal* as follows:

**The Jury Qualification Questionnaire**

The jury qualification questionnaire used in the Fourth Judicial District is the standard Minnesota juror qualification questionnaire used in each state judicial district in Minnesota, and is required by Minn. Gen. R. Prac. 807(d).[7] Lahd Aff. ¶¶ 3, 4.

---

[6] The Report and Recommendation in *Miles v. Dosal* cites heavily the Lahd Affidavit which has been submitted again in the present case as Wermerskirchen Aff. Ex. B.

[7] Rule 807(d) of the Jury Management Rules states that the questionnaire must request information essential for, among other items, providing basic background information including:

(1) determining whether a person meets the criteria for eligibility;

(2) determining whether there exists a mental or physical disability which would prevent the person from rendering satisfactory jury service;

*Miles v. Dosal*, 2005 WL 2415973, Report and Recommendation Nos. 04-4072, pp. 6-7 (D. Minn. Aug. 5, 2005).

The questionnaire has only had one substantive change since *Miles v. Dosal* was decided in 2004, which change being that disqualification for prior jury service is now for service in the past four years rather than in the past two. Wermerskirchen Aff. ¶ 7.

> Since at least 1998, the juror qualification questionnaire has requested prospective jurors to identify their race. Lahd. Aff. ¶ 4. The race identification item is in Section B of the questionnaire, which is used to collect a variety of demographic information (e.g. marital status, annual family income, gender, education, ages of children, occupation of potential juror and spouse). Lahd Aff. Exs. B, C. According to Lahd, unlike the juror qualification questionnaire that is used in the United States District Court for the District of Minnesota, which <u>requires</u> a potential juror to identify his or her race (Lahd Aff. ¶ 6, Ex. D), completion of the race question on the Minnesota questionnaire is voluntary.[8]

---

> (3) providing basic background information including age, race, gender, occupation, educational level, address, marital status, prior jury service within the past four years, occupation of spouse, and the age(s) of any children; and
>
> (4) efficiently managing the jury system.

Minn. Gen. R. Prac., Rule 807(d).

[8] The questionnaire has two sections- Section A and Section B. Above Section A is the following language:

> Minnesota Law requires you to serve on jury service if qualified. You may be guilty of a crime if you do one of the following (Minnesota Statute Chapter 593).
>
> - Fail to return this jury questionnaire.
> - Misrepresent information on this jury questionnaire.
> - Fail to show up for jury service as directed.

Under Section A the following language appears:

> This questionnaire is necessary to determine whether you are qualified to serve as a juror. Please check the appropriate boxes.

Lahd Aff. ¶ 5. Further, the prospective juror's race is used only for monitoring the representativeness and inclusiveness of jury panels, to check for discrimination, and in the event a party to a case makes a legal challenge to the petit or grand jury in the party's case. *Id.* A prospective juror is not disqualified from jury service if that person does not identify his or her race. *Id.* In such an event, when the potential juror reports for duty, Lahd explains to the person why the information is requested.[9] If the person still declines to provide the information, the person is not disqualified from jury service. *Id.*

*Miles v. Dosal*, Report and Recommendation at pp. 7-8.

### Selection of Prospective Jurors for Grand Juries

The Fourth Judicial District draws its source list of prospective jurors from the Minnesota voter registration list, the Minnesota drivers' license list, and the Minnesota identification list. Lahd Aff. ¶ 7. The lists are merged to create one juror source list and the duplicate names are removed. *Id.* This merged information does not include the race of any persons. Second Affidavit of Lynn Lahd ("Second Lahd Aff."), ¶ 4.

Each year approximately 40,000 names are randomly selected by computer[10] from the source list to make the master juror list for that year. Lahd Aff. ¶ 7.

*Miles v. Dosal*, Report and Recommendation at p 8.

The process has changed since *Miles v. Dosal* such that the annual juror master list for the

Fourth Judicial District now consists of all of the Hennepin County residents on the year's State

---

Under Section B the following language appears:

> This information is required solely to avoid discrimination in juror selection and has absolutely no bearing on qualifications for jury service.

Nowhere in the questionnaire does is explicitly state that the potential juror need not answer any of the items under Section B.

[9] Since Ms. Lahd is no longer Jury Division Supervisor, this would now be the job of Ms. Wermerskirchen.

[10] The Fourth Judicial District uses "Jury Plus, Next Generation" software for the jury selection process done by computer. The software uses the Marsaglia random number generator for those parts of the process that require the random selection or numbering of names. Lahd Aff. ¶ 8, Ex. E.

6

Jury Source List, rather than a random annual subset of approximately 10,000 Hennepin County residents. Wermerskirchen Aff. ¶ 4.

**Selection of Grand Jurors**

> Three times a year, 125 prospective grand jurors are randomly selected by computer from the master list[11] and are mailed the summons and qualification questionnaire for grand jury service. Lahd. Aff. ¶ 7.
>
> For summoned prospective grand jurors, qualification determinations for service and decisions on requests for excusal are made on the same grounds as those made for summoned prospective petit jurors. Lahd Aff. ¶ 11. A summoned prospective grand juror is not permitted any deferrals of grand jury service, and is excused from service only if the person requests to be excused and satisfied the impairment or hardship grounds for excusal set forth in Minn. Gen. R. Prac. 810(b). *Id.*
>
> When the summons for grand jury service is mailed to the 125 prospective grand jurors, the computer system randomly assigns each of the prospective jurors a number from one to 125. Lahd Aff. ¶ 12. Then the Jury Division later goes down the list of 125 names, starting at the top, and identifies the first 30 people on the list who have not been disqualified or excused from service. *Id.* The Jury Division sends these thirty people a letter informing them that they must report for grand jury service on the assigned date. *Id.* If a few of the thirty people have not yet returned a completed juror qualification questionnaire, the Jury Division will also mail this reporting letter to the next few persons on the list who have not been disqualified or excused, in order to ensure that at least thirty people who report will have completed the questionnaire. *Id*. The remaining people on the list are the "overcall" and are sent a letter by the Jury Division informing them that they do not need to report for service. *Id.* Of the persons who report for grand jury service, those with the first twenty-three assigned numbers are sworn in as the grand jurors and the remaining people are sworn in as alternates and released from service. *Id.*

*Miles v. Dosal*, Report and Recommendation at 11-12.

**Data Regarding Grand Jury Pools**

> Data regarding the racial composition of the grand juries impaneled in the Fourth Judicial District for the years 2002 to 2004, shows the racial composition of each of the nine grand juries that have been impaneled in the Fourth Judicial District in the last three years. Lahd Aff. ¶ 16. African-Americans comprised 9.2% of the grand jurors in the Fourth Judicial District (19 of the 207 grand jurors). *Id.*

---

[11] Now the State Jury Source List rather than a master list.

*Miles v. Dosal*, Report and Recommendation at 13.

Wermerskirchen Aff. Ex B contains 2010 census data regarding the racial composition of the population age eighteen and older in Hennepin County which comes from the website of the U.S. Census Bureau. According to this census data, African-Americans comprised 10.06% of the population age eighteen and older in Hennepin County in 2010, including those not qualified for jury service. Wermerskirchen Aff. ¶ 8. The Jury Division's data concerning the racial composition of the grand juries impaneled in the Fourth Judicial District from 2008 to present shows that African-Americans comprised 10.25% of the grand jurors in the Fourth Judicial District from 2008 to present. Wermerskirchen Aff. ¶ 9.

## II.  Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a fact is "material", a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248. Where, as here, there are cross-motions for summary judgment, summary judgment is only appropriate if one of the parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed. To succeed on summary judgment, the moving party must show that the opposing party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

The Court recognizes that when a party files a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." M*atsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587(1986) (quoting from *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). In this situation, each party has filed a motion for summary judgment. It is therefore proper to view the facts on the whole, without prejudice to either party. The facts will be taken as given, therefore, and the question at hand is whether the Plaintiff has or has not established a prima facie case for violation of her equal protection rights guaranteed under the Fourteenth Amendment.

### III.     Discussion

Plaintiff challenges the Minnesota juror selection process on the grounds that requiring summoned prospective jurors to identify their race on the jury selection qualification questionnaire violates the Equal Protection Clause because it causes African-Americans to be systematically excluded from jury service in the Fourth Judicial District. (Am. Comp. ¶ 97.) Plaintiff's challenge rests on her belief that the thirty persons ultimately chosen for jury service are personally chosen from the original list of 125 by the Jury District Supervisor or her designee. (*Id.* ¶ 59.) This belief about the selection process is incorrect. The letter from Lynn Lahd to the Plaintiff's nephew, submitted as Plaintiff's Exhibit 2, which Plaintiff relies on to support her position, confirms that the selection process is the same as that stated in the Wersmerskirchen Affidavit and the Lahd Affidavit. Plaintiff relies on the same factual bases as Defendants because the information contained in the letter concerning the jury selection process is substantively identical to the information found in the Affidavits of both Lynn Lahd and Leah Wermerskirchen. The letter confirms that the questionnaires are assigned a random number from

one to 125 and that after the questionnaires have been returned and the appropriate excusals and disqualifications have been made (based on objective criteria), the first 23 qualified jurors from the random order list become the seated Grand Jury. See Plaintiff's Ex. C4-C5.

As observed in the Report and Recommendation in *Miles v. Dosal,*[12] the Supreme Court has long recognized that "it is a denial of the equal protection of the laws to try a defendant of a particular race or color under an indictment issued by a grand jury . . . from which all persons of his race or color have, solely because of that race or color, been excluded by the State ...." *Castaneda v. Partida*, 430 U.S. 482, 492 (1977) (quoting *Hernandez v. Texas*, 347 U.S. 475, 477 (1954)).[13] Additionally, although earlier cases only spoke to complete exclusion of the identifiable group, the Court later established the principle that substantial underrepresentation of the group is also a constitutional violation if it is the result of intentional discrimination. *See Id.* at 493. The Fifth and Fourteenth Amendment guarantees of equal protection require that jury selection procedures be racially nondiscriminatory. *See Floyd v. Garrison*, 996 F.2 947, 949 (1993). To establish a prima facie equal protection violation, Plaintiff must show that:

> (1) blacks are "a recognizable, distinct class, singled out for different treatment;" (2) blacks were substantially underrepresented in jury pools over a significant period of time; and (3) the jury-selection process is "susceptible of abuse or is not racially neutral."

*Floyd v. Garrison*, 996 F.2d 947, 949 (8th Cir. 1993) (quoting *Castaneda v. Partida,* 430 U.S. 482, 494).

The first element of the Plaintiff's prima facie case is met as it is undisputed that African-Americans "are members of a group recognizable as a distinct class capable of being singled out for different treatment under the law." *Rose v. Mitchell*, 443 U.S. 545, 565 (1979). Defendants

---

[12] Adopted by Order from the District Court dated September 27, 2005.

[13] *Miles v. Dosal,* Report and Recommendation at 15.

argue that Plaintiff cannot meet element two or three of her prima facie case and that summary judgment should be entered in their favor. Plaintiff argues that she has in fact met all three elements required to establish her prima facie case and that summary judgment therefore should instead be entered in her favor.

The Court concludes, based on the evidence, that Plaintiff has failed to meet elements two and three of her prima facie case of equal protection claim asserting systematic racial exclusion from jury service.

### A. Substantial Underrepresentation on Grant Juries in the Fourth Judicial District of Minnesota.

The second element of a prima facie case for an equal protection claim alleging systematic exclusion from jury service requires Plaintiff to show blacks were substantially underrepresented in jury pools over a significant period of time. *See Castaneda*, 430 U.S. at 494. Plaintiff cannot show this underrepresentation over a significant period of time by basing her claim on the absence of African-Americans on the single grand jury that indicted her nephew, Michael Francis, in 2004. (Am. Comp. ¶¶ 75-80, 84.) *See United States v. Horne*, 4 F.3d 579, 588 (8th Cir. 1993) ( "[E]vidence of a discrepancy on a single venire panel cannot demonstrate systematic exclusion".)[14] The "degree of underrepresentation must be proved by comparing the

---

[14] Plaintiff cites to several cases to show that a prima facie case of an equal protection claim alleging systematic exclusion from jury service can be established by showing an absence of African-Americans on a particular jury in conjunction with a showing that either the jury commissioners failed to be informed of eligible African-American jurors in the community or that the selection procedures are non-neutral.

Plaintiff cites to *Castaneda*, 430 U.S. at 493-494, *Washington v. Davis*, 426 U.S. 241 (1976), and *Batson v. Kentucky*, 476 U.S. 79, 94-95 (1986) which state that a prima facie case to show discriminatory purpose may be established by "the absence of Negroes on a particular jury combined with the failure of the jury commissioners to be informed of eligible Negro jurors in a community . . . or with racially non-neutral selection procedures."

This is not a case where jury commissioners failed to be informed of eligible minority jurors in a community. Additionally, as shown in the discussion of element three of the prima

11

proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time." *Castaneda*, 430 U.S. at 494.

Plaintiff fails to provide any evidence comparing the proportion of African-Americans in the total population to the proportion called to serve as grand jurors. The only evidence she offers to show underrepresentation at all is the 2004 Hennepin County Grand Jury Venire Data, introduced as Exhibit 4, which shows that there were no African-Americans on the July 2004 grand jury. (Compl. ¶ 80.) Plaintiff compares this data with the proportion of African-Americans in the total population in 2004, which was 8.7% according to Exhibit 3. (Compl. ¶¶ 75-79.) As previously noted, in order to establish element two of the prima facie case, Plaintiff must show that there was substantial underrepresentation over a significant period of time. The data that Plaintiff has provided fails to establish such substantial underrepresentation.

In support of their motion for summary judgment, Defendants argue that Plaintiff could not establish that African-Americans have been substantially underrepresented in the Fourth Judicial District over a significant period of time, even if she had attempted to do so, because the data does not show such an underrepresentation. The data provided by Defendants shows a slight overrepresentation on grand juries in the Fourth Judicial District from 2008 to the present. Defendants' data shows that over the last four years, African-Americans comprised 10.25% of the grand jurors in the Fourth Judicial District. Wermerskirchen Aff., Ex. F. Defendants present for comparison the 2010 census percentage of African-Americans age eighteen an older in the Fourth Judicial District, which is listed as 10.06%. *Id.* ¶ 8, Ex. E.

In this case, for grand jury pools for the period of 2008 to the present, African-Americans were overrepresented—10.25% compared to 10.06% of the population of African-Americans,

---

facie case, the selection procedures employed in the Fourth Judicial District for jury selection are racially non-neutral.

age 18 and over, in the Fourth Judicial District for the census year 2010. Wermerskirchen Aff. ¶ 9, Ex. F. As to the period of 2002 through 2004, which would encompass the particular jury that Plaintiff is concerned with, African-Americans were also overrepresented—9.2% as compared to 7.4% of the population of African-Americans, age 18 and over, in the Fourth Judicial District for the census year 2000. *Miles v. Dosal,* Report and Recommendation at p. 23.

Regardless, then, of the period of time examined, based on the undisputed evidence, Plaintiff cannot establish the second element of an equal protection claim of systematic racial exclusion from jury service. Because all three elements must be met to establish a prima facie case, the Court recommends that Defendants' motion for summary judgment be granted, and that Plaintiff's motion for summary judgment be denied.

**B. Neutrality of the Jury Selection Process in the Fourth Judicial District**

Even if the Court found that Plaintiff had made a prima facie showing of the second element of her equal protection claim, summary judgment in the Defendants' favor would still be appropriate because Plaintiff additionally fails to meet the third element of her claim, that the juror selection process in the Fourth Judicial District is racially non-neutral and is susceptible to abuse. *Castaneda*, 430 U.S. at 494.

Plaintiff, relying on *Alexander v. Louisiana*, 405 U.S. 625, 630 (1972), claims that the jury selection procedures are not racially neutral because the race identification question on the questionnaire makes it easier to discriminate for those who have a mind to. Plaintiff alleges that jury qualification is determined on the basis of the information in the questionnaire, including the race identification question, and that this allows for discrimination. However, Plaintiffs have not presented any evidence to support these claims or arguments.

Defendants have provided evidence showing that the process for jury selection in the Fourth Judicial District for selecting those persons to summon for jury duty, determining the prospective jurors' qualifications for jury service, deciding their requests for excusal from or deferral of jury service, and forming the grand jury panel, is random and without the benefit of the race information provided by a potential juror in the juror qualification questionnaire.[15] As laid out by Defendants:

- The list of prospective jurors, obtained from a merged list of the Minnesota voter registration list, the Minnesota drivers' license list, and the Minnesota identification list, does not include the race of any persons. Wermerskirchen Aff. Ex. B. ¶7.

- The grounds for disqualifying a summoned prospective juror are objective and do not include the race information found in Section B of the juror qualification questionnaire. Rather, the grounds are based solely on information provided by the summoned prospective juror in Section A of the juror qualification questionnaire. Wermerskirchen Aff. Ex. B. ¶9.

- A summoned prospective juror is excused from jury service only if the person requests to be excused and the person satisfies the impairment or hardship grounds for excusal set forth in Minn. Gen. R. Prac. 810 (b). Wermerskirchen Aff. Ex. B. ¶9. Further, as to those individuals who do request to be excused from jury service, the Fourth Judicial District does not have access to the race of the vast majority of these prospective jurors, as most of these requests are made without the prospective juror having returned a qualification questionnaire. *Id.*

- Grand jury panels are formed by random computer selection of names from the list of the summoned prospective grand jurors who have completed the juror qualification questionnaire, but who have not been disqualified or excused from service, and who report for duty on the assigned date. Wermerskirchen Aff. Ex. B. ¶¶ 10, 12.

- It is not until the actual jury trial that the demographic profile (including race) obtained from Section B of the juror qualification questionnaire is given to the

---

[15] Facts presented by Defendant in their memorandum in support of their motion of summary judgment showing that the process for jury selection is performed randomly and without the benefit of the race information provided by a potential juror in the qualification questionnaire are substantively the same as those found in the Report and Recommendation for *Miles v. Dosal* at pp. 25-26.

presiding judge and the attorneys for the parties in a case. Wermerskirchen
Aff. Ex. B. ¶10.

Like the Court in *Miles v. Dosal*, this Court finds that the race identification question on the juror qualification questionnaire has not rendered the jury selection process in the Fourth Judicial District susceptible to abuse or cause it to be racially non-neutral.

The Court concludes that Plaintiff has failed to establish the third element of her equal protection claim of systematic racial exclusion from jury service—that the jury-selection process is susceptible of abuse or is not racially neutral. Based on the facts, the Court recommends that Defendants' motion for summary judgment be granted and Plaintiff's motion for summary judgment be denied.

## **CONCLUSION**

Based upon the record, memoranda, and oral arguments of counsel, **IT IS HEREBY RECOMMENDED** that:

1. The Plaintiff's Motion for Summary Judgment [Docket No. 56] be **DENIED.**

2. The Defendants' Motion for Summary Judgment [Docket No. 37] be **GRANTED.**

3. The Amended Complaint in this action be dismissed with prejudice and that judgment be entered for the Defendant.


Dated:  December 26, 2012　　　　　　　　　　　　　s/Arthur J. Boylan
　　　　　　　　　　　　　　　　　　　　　　　Chief Magistrate Judge Arthur J. Boylan
　　　　　　　　　　　　　　　　　　　　　　　United States District Court

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before January 10 , 2013.